**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

DONTAVIS WALKER,

      Plaintiff,

v.

JAMES BAILEY,

      Defendant.

)
)
)
)
)
)
)
)
)

No. 2:23-cv-02169-TLP-cgc

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

---

    In March 2023, Dontavis Walker ("Plaintiff") sued Defendant Captain James Bailey ("Captain Bailey") in his individual capacity under 42 U.S.C. § 1983.  (ECF No. 1.)  Captain Bailey moved to dismiss this case.  (ECF No. 15.)  Plaintiff responded in opposition, and Captain Bailey replied.  (ECF Nos. 21, 22.)  For the reasons explained below, the Court **GRANTS** the Motion to Dismiss.

## BACKGROUND

    On August 7, 2020, the Circuit Court of Fayette County, Tennessee ("Circuit Court") sentenced Plaintiff in three separate criminal cases: 26-CR-35, 19-CR-58, and 19-CR-57.  (ECF No. 1 at PageID 2.)[1]   In total, the Circuit Court sentenced Plaintiff to spend 813 days in the Fayette County Jail ("Jail").  (*Id.*)  But, during the sentencing hearing, the Circuit Court also credited Plaintiff with 202 days for the time he had already served.  (*Id.*)  The sentencing court

---

[1] The Court has access to both Plaintiff's Complaint and the sentencing transcript.  (ECF Nos. 1, 1-1.)  For this Motion to Dismiss, the Court accepts as true Plaintiff's allegations about the sentencing transcript.  (*See* ECF No. 1.)  Captain Bailey does not argue that Plaintiff's allegations about his state court sentences are wrong.

directed that this credit be applied to Plaintiff's sentence in case number 19-CR-57. (*Id.*) This

meant, in sum, Plaintiff needed only to serve 611 days and his release date should have been

April 10, 2022. (*Id.*) But on May 21, 2021, when the Circuit Court issued the mittimus in case

number 19-CR-57, the Circuit Court failed to include the 202-day credit. (*Id.*; ECF 1-2 at

PageID 23.)

On December 15, 2021, Plaintiff's attorney moved to "Set Release Date" in the Circuit

Court. (ECF No. 15 at PageID 153). In the motion, he argued that Plaintiff's release date should

be April 10, 2022, even though it was scheduled for September 2022. (*Id.*) The motion failed to

mention the sentencing transcript or explain that the mittimus did not match the sentencing

transcript. (*Id.*) The Circuit Court, it seems, never ruled on the motion.[2] (*Id.*)

Plaintiff then submitted a grievance form at the Jail on April 1, 2022. (ECF No. 1 at

PageID 3; ECF No. 1-3.) In this form, Plaintiff expressed concern that the jail computer system

did not accurately reflect his release date, and he requested that someone look at his time. (ECF

No. 1-3.) He added, "[I] also have all my paperwork to show my actual release date so please

check into this and thanks in advance." (*Id.*) And he asserted that any incarceration beyond

April 10, 2022, would violate his constitutional rights. (*Id.*)

And on April 5, 2022, Plaintiff received a response to his grievance. (ECF No. 1 at

PageID 3; ECF No. 1-3.) This response stated: "[W]hile your booking in date was January 19th

2020 your sentence start date wasn't until August 7th 2020. All [t]ime is put in by Lt. White

who puts it in the computer based on paperwork she is giv[en] by the Court. I will pass this

---

[2] As explained in his Motion to Dismiss, Captain Bailey obtained and attached to his Motion a
certified copy of Plaintiff's criminal file from the Circuit Court of Fayette County. (*See* ECF No
15-1 at PageID 55; ECF No. 15-2.) And there is no order on this motion in the file. (*See* ECF
No. 15-2.)

request along to Captain Bailey so he is aware of your request."  (ECF No. 1-3.)  Captain Bailey,

the Defendant here, was a Captain and Correctional Officer at Fayette County Jail.  (ECF No. 1

at PageID 2.)  The Complaint lacks any other information about Captain Bailey's role or the

scope of his duties in the Jail.  (*See* ECF No. 1.)

On April 21, 2022, Plaintiff moved pro se in the Circuit Court in a document titled,

"Motion to Fix Defendants Jail Credits for Defendants Actual Release Date."  (ECF No. 15-2 at

PageID 196.)  In this motion, Plaintiff stated he was "being incarcerated longer than he [was]

supposed to be," and he asked the Circuit Court to fix his jail credits.  (*Id.*)  Also in this motion,

Plaintiff explained that the Circuit Court's mittimus was improper and failed to include his time

served.  (*Id.*)  The Circuit Court did not rule on the motion, and on June 1, 2022, Plaintiff resent

his motion with a letter to the Circuit Court.  (*Id.* at PageID 198–99.)  In the letter, Plaintiff

requested a court date.  (*Id.* at PageID 199.)  Nine days later, on June 10, 2022, the Circuit Court

entered an order denying Plaintiff's motion and finding "that the judgment sheet and prior orders

of the Court accurately reflects the jail credits of Dontavis Jamal Walker."  (*Id.* at PageID 197).

On June 17, 2022, Plaintiff filed another pro se letter in Circuit Court, and with this letter,

he included his sentencing transcript.  (*Id.* at PageID 201, 206.)  In the letter, he referenced the

Circuit Court's June 10th order, and he wrote: "[T]he credits **DO NOT** accurately reflect the

judge oral pronouncement on 8-7-20 and I do have copies of the transcript of evidence and the

judge oral pronouncement is reflected on <u>PAGE 11</u> of the Transcript of Evidence.  And what

could once be considered a clerical error is now looking like complete **NEGLIGENCE** on the

courts behalf."  (*Id.* at PageID 201 (emphasis in original).)  He also requested that the error be

fixed so that he could be released.  (*Id.*)

On June 17, 2022, the same day Plaintiff filed the above letter, the Circuit Court entered

the following order:

> It appears that on August 7, 2020 the defendant's probation was revoked. Further,
> it appears that the defendant had earned jail credit of 202 days as of August 7, 2020
> and such credit was omitted on the revocation order entered on May 19, 2021.
> Therefore, the defendant shall be awarded the jail credit of 202 days as of August
> 7, 2020 as well as any additional credits which he may have subsequently earned
> on docket number #19-CR-57.

(*Id.* at PageID 220.) And the same day, the Jail released Plaintiff. (*See* ECF No. 1 at PageID

4.)[3] This means he was released 68 days after April 10, 2022, the date Plaintiff would have been

released had the written mittimus properly reflected the Circuit Court's oral rulings during the

sentencing hearing. (*See id.*)

On August 15, 2022, Plaintiff's Counsel submitted a public records request to Fayette

County. This request sought:

> Any, and all, public records relating to Dontavis Walker (D/O/B 09/19/94), who
> was incarcerated between 2020 and 2022 at the Fayette County Detention Center,
> this request includes, but is not limited to, inmate intake forms, arrest reports, e-
> mail communications between staff and/or outside agencies regarding Mr.
> Walker's jail sentence, each of his grievances filed on the electronic kiosks, and
> copies of both of the hand written correspondences mailed from Mr. Walker to both
> Sheriff Riles and Chief Turner regarding his time served and his sentence.

(ECF No. 1 at PageID 4.) Fayette County responded to the request on September 15, 2022. (*Id.*)

And according to Plaintiff, "[n]owhere in the 113 pages of public record from Fayette County is

there any evidence that Captain James Bailey took any action to investigate Plaintiff's claim that

he should be released on April 10, 2022." (*Id.*) Plaintiff adds that Captain Bailey did not "speak

to Plaintiff or verify the paperwork that Plaintiff had in his possession." (*Id.*)

---

[3] Plaintiff alleged that "[o]n June 17, 2022, 68 days after he should have been released, the Court
ordered that Plaintiff be released." (ECF No. 1 at PageID 4.) Plaintiff also alleged that he spent
68 days unlawfully incarcerated. (*Id.*)

Plaintiff sues Captain Bailey under 42 U.S.C. § 1983.  (*Id.* at PageID 5.)  He claims that

Captain Bailey acted with deliberate indifference and violated his rights under the Fourth and

Fourteenth Amendments.  (*Id.*)  Plaintiff further alleges that Captain Bailey "was put on notice

that Plaintiff was about to be overincarcerated in violation of his Fourth and Fourteenth

Amendment rights" and that Captain Bailey failed to investigate the issue.  (*Id.*)  Plaintiff asserts

that, had Captain Bailey "taken any action to investigate Plaintiff's claims, such as speaking to

Plaintiff and viewing the court transcript for himself, Plaintiff would have been released on April

10, 2022, instead of spending 68 days unlawfully incarcerated in violation of his constitutional

rights."  (ECF No. 1 at PageID 4.)

Captain Bailey moves to dismiss the case, arguing he is entitled to both quasi-judicial

immunity and qualified immunity and that Plaintiff fails to state a claim under Section 1983.

(ECF Nos. 15, 15-1.)  Plaintiff responded, and Captain Bailey replied.  (ECF Nos. 21, 22.)  The

Court will now set out the relevant legal standards and then assess the Motion to Dismiss.

## **LEGAL STANDARD**

To survive a motion to dismiss, a plaintiff must allege enough facts to "state a claim to

relief that is plausible on its face." *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  And the ruling court must accept all factual allegations

as true.  *See id.*  But it need not accept a plaintiff's legal conclusions or make unreasonable

inferences in favor of a plaintiff.  *See id.*; *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020).

What is more, when reviewing a motion to dismiss, the ruling court generally restricts its review

to the face of the complaint.  *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022).

Still, in reviewing a motion to dismiss, "a court may consider exhibits attached to the complaint,

public records, items appearing in the record of the case, and exhibits attached to defendant's

motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024).

And courts may evaluate qualified immunity on a motion to dismiss. *See Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). And "[a]lthough a defendant ordinarily bears the burden of proof for an affirmative defense, a plaintiff bears the burden of overcoming qualified immunity." *Id.* (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Accordingly, "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Id.*; *Mitchell*, 472 U.S. at 526.

That said, the Sixth Circuit has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Cooperrider v. Woods*, 127 F.4th 1019, 1036 (6th Cir. 2025) (citing *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015)). And the reasoning for this is "[a]bsent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is 'obvious' or 'squarely governed' by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not for purposes of determining whether a right is clearly established." *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (citing *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005)).

## ANALYSIS

As a preliminary note, both Parties have included records for this Court to consider in deciding this motion to dismiss. As stated above, although courts typically review only the complaint when ruling on a motion to dismiss, courts may also consider certain documents, like public records. *See Bray*, 97 F.4th at 410. Along with his Complaint, Plaintiff filed a grievance

form he submitted to the Jail and the Jail's response to that grievance. (ECF No. 1-3.) Plaintiff also attached the Circuit Court's mittimuses and the sentencing transcript. (ECF Nos. 1-1, 1-2.) And with his motion to dismiss, Captain Bailey filed the criminal court case's records. (ECF No. 15-2.) The Court may consider all these records at this stage, given the documents are all either public records, exhibits attached to the complaint, or exhibits attached to the motion to dismiss that are referenced in the Complaint and central to the claims. *See Blackwell v. Nocerini*, 123 F.4th 479, 487 (6th Cir. 2024); *Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024). And neither party has argued that the Court should not consider these documents. (*See* ECF Nos. 15-1, 21.) The Court now turns to assess the merits of the motion to dismiss.

Plaintiffs may sue under Section 1983 for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" against any person acting under color of state law. 42 U.S.C. § 1983; *see also Hall v. Navarre*, 118 F.4th 749, 756 (6th Cir. 2024) ("Section 1983 authorizes an individual to bring suit against state and local officials who deprive the individual of a federal right under color of state law."). But "[q]ualified immunity shields public officials from personal liability under § 1983 unless they 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 326 (6th Cir. 2023) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

In this case, Plaintiff sues Captain Bailey in his individual capacity and argues that, while acting under color of state law, Captain Bailey violated his Fourth and Fourteenth Amendment rights. (ECF No. 1 at PageID 2, 5.) Among other arguments, Captain Bailey maintains that he is entitled to qualified immunity and the Court should dismiss this action. (ECF No. 15-1 at

PageID 61.)  For the reasons explained in the next section, the Court agrees with Captain Bailey

and **GRANTS** the Motion to Dismiss.

# I.    Qualified Immunity

Qualified immunity shields public officials "unless their actions violate clearly

established rights." *DiLuzio v. Vill. of Yorkville, Ohio*, 796 F.3d 604, 608 (6th Cir. 2015).  And

to overcome qualified immunity, the plaintiff must show "that the official's conduct (1) violated

a constitutional right that (2) was clearly established." *Hart v. Hillsdale Cnty., Michigan*, 973

F.3d 627, 635 (6th Cir. 2020); *see Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation

omitted).  Courts may choose which prong to handle first. *Ashcroft*, 563 U.S. at 735.  And at the

motion to dismiss stage, courts ask whether "reading the complaint in the light most favorable to

the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established

constitutional right." *Hart*, 973 F.3d at 635.  "As with any other motion to dismiss, we perform

this analysis while accepting the plaintiff's factual allegations as true and drawing all reasonable

inferences in his favor." *Id.* (citing *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th

Cir. 2016).

## A.    Clearly Established

The Court will first take up the question of whether Defendants violated a clearly

established right as it relates to qualified immunity.  To qualify as a clearly established right, the

law establishing that right "must be so settled that every reasonable official would have

understood that what he is doing violates [the] right at issue*." Vanderhoef v. Dixon*, 938 F.3d

271, 278 (6th Cir. 2019).  Indeed "[a] plaintiff must identify a case with a fact pattern similar

enough to have given 'fair and clear warning to officers' about what the law requires." *Hopper

v. Phil Plummer*, 887 F.3d 744, 755 (6th Cir. 2018) (citation omitted).  And, in doing so, a

plaintiff bringing a case within the Sixth Circuit "must provide on-point caselaw that would bind a panel of [the Sixth Circuit]." *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 368 (6th Cir. 2022). That said, "a case need not be on all fours in order to form the basis for the clearly established right." *Hopper*, 887 F.3d at 755 (citation omitted).

And the clearly established prong "requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). Accordingly, "courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (citation omitted).

In this case, Plaintiff broadly asserts that there is a clearly established right for a prisoner to be released once his prison term has ended. (ECF No. 21 at PageID 235.) But Captain Bailey argues the inquiry is narrower. He maintains that Plaintiff must show that "Captain Bailey [was] on notice that following a facially valid court order concerning an inmate's sentence would violate the inmate's constitutional rights." (ECF No. 15-1 at PageID 64.) He argues that no case law put him on notice of any such rule. (*Id.*) And with this, Captain Bailey makes an accurate statement. Indeed, the Court is unaware of binding precedent holding that a prison official may violate an inmate's constitutional rights when he follows a valid court order related to the length of an inmate's sentence. Even so, Plaintiff maintains that "a case directly on point is not required" and that it is clearly established that "when a prisoner's sentence has expired, he is entitled to release." [4] (ECF No. 21 at PageID 235.)

_____

[4] Plaintiff further argues that Captain Bailey "should not get the pleasure of relying on the criminal court's orders where he cannot allege that he bothered to review the criminal court's orders." (*Id.* at PageID 236.) But the Court need not decide whether Captain Bailey read the court order. Indeed, even if Captain Bailey failed to read the relevant court order, Plaintiff has not shown that he violated a clearly established right, given that Plaintiff relies only on a broad

At first blush, Plaintiff's stance sounds logical, and under a different set of facts, his position may carry the day. But the answer here is more complicated. No matter how narrow or fact sensitive the Court makes its inquiry here, given the facts of this case, Plaintiff's broad assertion that he had a right to be released at the end of his prison term is too general. Indeed, this is not a case where a written order specified an exact date for an inmate's release and a jail official kept that inmate in custody beyond that date. Remember, the Circuit Court's written order here contains an alleged mistake—it is silent as to jail credit. (*See* ECF No. 1-2 at PageID 23.) So reading only the Circuit Court order does not reveal the correct release date. (*Id.*) The only way to calculate the correct release date is to compare the sentencing transcript with the written order.

What is more, in his motion to the Circuit Court, Plaintiff's lawyer failed to mention the difference between the transcript and the written order or explain why he calculated Plaintiff's release date using January 19, 2020 as the sentence start date.[5] And so the Circuit Court failed to

---

statement based on an unpublished decision from the Sixth Circuit. The Sixth Circuit has since called the principle Plaintiff asserts into question, saying it has "shaky underpinnings." *See discussion below (p.11) about Jones v. Bottom.* And, in any event, the Court finds Plaintiff's argument here problematic for other reasons. First, it is not Captain Bailey's job to assert that he read the court order. Instead, it is Plaintiff's burden to allege Captain Bailey did not read the order. And while Plaintiff alleges that Captain Bailey did not investigate Plaintiff's grievance, Plaintiff does not allege that Captain Bailey has never read the relevant court order. (*See* ECF No. 1.) Second, given the facts here, the Court finds that Captain Bailey relied on the court order, even if he never read it. Indeed, the Jail's response to Plaintiff's grievance indicates that the whole system operated on the Circuit Court's written orders. (ECF No. 1-3 ("All time is put in by Lt. White who puts it in the computer based on paperwork she is giv[en] by the Court."); *Cf. Arizona v. Evans*, 514 U.S. 1, 15–16 (1995) ("There is no indication that the arresting officer was not acting objectively reasonably when he relied upon the police computer record."). And Plaintiff has not argued or alleged anything to the contrary. (*See* ECF No. 1.)

[5] In the Circuit Court, Plaintiff's lawyer filed a motion to correct Plaintiff's release date. In the motion, he argued that Plaintiff's release date should be April 10, 2022, instead of September 2022. (ECF No. 15-2 at PageID 153–57.) And he stated: "In summary, the Court ordered Dontavis Walker to serve a total of 812 days in custody after his conviction at trial and probation revocations. Mr. Walker has been in custody since January 19, 2020. Therefore, Mr. Walker

correct the order at first.  In fact, the Circuit Court failed to correct the Order until Plaintiff sent

the Circuit Court the sentencing transcript.  (*See* ECF No. 15-2.)  Simply put, Plaintiff cannot

meet his burden for showing a clearly established right here—by relying on a general statement,

found only in unpublished cases, that a prisoner has a right to be released at the end of his prison

term.  (*See* ECF No. 21.)  The Court provides further explanation below.

In arguing Captain Bailey violated a clearly established right, Plaintiff cites *Shorts v.*

*Bartholomew*, 255 F. App'x 46 (6th Cir. 2007).[6]  (ECF No. 21 at PageID 235.)  In *Shorts*, the

Sixth Circuit stated, "[t]he second element, that the right at issue is secured by the Constitution

and laws of the United States, is beyond dispute: when a prisoner's sentence has expired, he is

entitled to release."  255 F. App'x at 51.  And the Sixth Circuit made very similar statements in

*Jones v. Tilley*, 764 F. App'x 447, 449 (6th Cir. 2019) ("*Jones I*") and *Rhoades v. Tilley*, No. 21-

5899, 2022 WL 684576, at *2 (6th Cir. Mar. 8, 2022).  But, as explained next, the Sixth Circuit

has recently cast doubt on whether these cases correctly find a clearly established right.

In *Jones v. Bottom,* 85 F.4th 805, 810 (6th Cir. 2023) ("*Jones II*"), the Sixth Circuit

explained that it had held in *Jones I* that, under the Eighth and Fourteenth Amendments, there is

---

would suggest to the Court that his release date should be April 10, 2022, instead of September
2022."  (*Id.* at PageID 156.)  Other than noting he had been in custody, Plaintiff's lawyer never
explained why January 19, 2020, was the correct date from which to calculate Plaintiff's
sentence.  (*Id.*)  Indeed, in the motion, Plaintiff's lawyer never mentioned the sentencing
transcript, Plaintiff's 202 days of time served credit, or that the Circuit Court's written order
contained an error.  (*Id.*)

[6] The Court notes that Plaintiff sued under the Fourth and Fourteenth Amendments here.  These
are the same amendments under which the plaintiff in *Shorts v. Bartholomew*, 255 F. App'x 46
(6th Cir. 2007) sued.  But, the Court in *Shorts* seems to have the found the right against over-
detainment to be based in the Fourteenth Amendment, not the Fourth Amendment.  255 F. App'x
at 51.  And, in the other Sixth Circuit unpublished decisions that hold there is a clearly
established right against over-detainment, the Sixth Circuit found this right arose under the
Eighth and Fourteenth Amendments.  *Jones I*, 764 F. App'x at 449; *Rhoades*, 2022 WL 684576,
at *2.  But the Court need not dwell on which amendments Plaintiff named, given the Court finds
that there is not a clearly established right here under any amendment.

a clearly established right that one shall not be detained past their term of imprisonment.[7]  85
F.4th at 810 (citing *Jones I*, 764 F. App'x at 449).  But the *Jones II* court noted that its earlier
holding in *Jones I* had "shaky underpinnings" for two reasons.  *Id.* at 811.  First, the *Jones II*
court explained that the comment from the earlier cases "strikes at a high level of generality,
something case law frowns upon."  *Id.* (citing *White v. Pauly*, 580 U.S. 73, 79 (2017) (("[I]t is
again necessary to reiterate the longstanding principle that 'clearly established law' should not be
defined 'at a high level of generality.'")).  And second, the *Jones II* court noted that the earlier
holding "was justified by a single citation to an unpublished decision,"[8] which, in the Sixth
Circuit's words, is "something our cases forbid."  *Id.* (citing references omitted).

   To support its reasoning about unpublished decisions, the *Jones II* court cited the Sixth
Circuit's opinion in *Bell v. City of Southfield, Michigan*, 37 F.4th 362, 367–68 (6th Cir. 2022).
The *Bell* court explained that a plaintiff bears the burden to show a right is clearly established.
37 F.4th at 367.  And the *Bell* court further explained: "A plaintiff cannot point to unpublished
decisions to meet this burden.  Basic logic tells us at least this much.  After all, the qualified-
immunity inquiry looks at whether a right has been clearly established.  For a right to be clearly
established, existing *precedent* must have placed the statutory or constitutional question beyond
debate."  *Id.* at 367–68 (citing reference omitted).

---

[7] The Sixth Circuit issued the *Jones II* opinion a few weeks after briefing on the motion to
dismiss in this case was complete.  And so, the Parties here included no briefing on *Jones II*.
(*See* ECF Nos. 15, 21, 22.)

[8] The Sixth Circuit in *Jones II* is referencing its prior holding in *Jones I*.  And the Sixth Circuit in
*Jones I* relied on *Shorts* for its holding that "[t]he right plaintiff asserts—his right not to be
detained past the expiration of his term of incarceration under the Fourteenth and Eighth
Amendments—is one we have recognized as being established 'beyond dispute.'"  *Jones I*, 764
F. App'x at 449; *see Shorts*, 255 F. App'x at 51 ("The second element, that the right at issue is
secured by the Constitution and laws of the United States, is beyond dispute: when a prisoner's
sentence has expired, he is entitled to release." (citing only out of circuit cases)).

In the end, the Sixth Circuit in *Jones II*, while referring to a prisoner's right to not be detained past his term of imprisonment, warned that "future parties may bear in mind the questionable nature of this 'clearly established' right." 85 F.4th at 811. This Court takes this warning seriously and holds that Plaintiff fails on the "clearly established right" prong of the qualified immunity analysis. The Court is especially careful to heed to the *Jones II* warning because, as will be shown later in this opinion, this case is like *Jones II*.

In sum, Plaintiff, relying on a holding from an unpublished case, broadly argues that Captain Bailey is liable because a prisoner has a clearly established right to be released once his sentence has expired. (ECF No. 21 at PageID 235 (citing *Shorts*, 255 F. App'x at 51).) Even though Plaintiff's position has logical appeal, because this Court takes the *Jones II* court's warning seriously, it cannot find a clearly established right here, given the facts of this case.[9] *See Bell*, 37 F.4th at 367–68; *Jones II*, 85 F.4th at 811; *White v. Pauly*, 580 U.S. 73, 79 (2017). That is why the Court finds that Plaintiff fails to point to a clearly established constitutional right that Captain Bailey could have plausibly violated.

That said, even if the Court is incorrect on this point, Plaintiff's claim would still fail for the reasons explained below.

---

[9] This Court recognizes that the Sixth Circuit has cautioned against deciding the "clearly established right" prong at the motion to dismiss stage, given sometimes more factual development is necessary to decide whether there is precedent on point. *See Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019). But further factual development would not help this Court answer the clearly established question here. In fact, in deciding this Motion to Dismiss, the Court has the benefit of many public records submitted by the Parties. (*See* ECF Nos. 1-1, 1-2, 1-3, 15-2.) And, besides for *Jones II*, this Court is unaware of any published Sixth Circuit decision that comes close to this case's facts.

**B.      Deliberate Indifference**

Besides showing a clearly established right is at issue, a plaintiff seeking to overcome qualified immunity must show the defendant violated said right.  Plaintiff here argues that Captain Bailey was deliberately indifferent to Plaintiff's over-incarceration which violated his constitutional rights.  To assess this type of claim, courts look to whether the defendant "(1) had knowledge of the risk that an unwarranted punishment was being inflicted on [the plaintiff] and (2) failed to act or took only ineffectual action under the circumstances; and (3) whether there is a causal connection between [the defendant's] conduct and [the plaintiff's] allegedly unwarranted punishment." *Jones II*, 85 F.4th 805 at 811 (citing reference omitted); *see also Shorts*, 255 F. App'x at 55.  In sum, a deliberate indifference claim in the over-detention context "requires knowledge, failure to act, and causation." *Jones II*, 85 F.4th at 811.

And as will be discussed below, Plaintiff has not sufficiently alleged that Captain Bailey's deliberate indifference had a causal connection to Plaintiff's over detention.  Plaintiff's claim against Captain Bailey therefore must be dismissed.

**1.      Knowledge**

First, Plaintiff must allege that Captain Bailey had "knowledge of the risk that an unwarranted punishment was being inflicted on [the plaintiff]." *See Jones II*, 85 F.4th 805 at 811.  And Captain Bailey must have had "actual knowledge of the error." *Id.* at 814.  Although this is a close call, the Court, accepting Plaintiff's factual allegations as true and drawing reasonable inferences in Plaintiff's favor, finds that Plaintiff plausibly alleges that Captain Bailey had actual knowledge of the risk that Plaintiff was being overincarcerated.

For example, Plaintiff asserts that he "submitted a grievance form" that allegedly expressed "concern that the prison computer system did not accurately reflect his time served,"[10] requested for someone to verify the accuracy of his time, and stated that "any incarceration past April 10, 2022, would be a violation of his constitutional rights." (ECF No. 1 at PageID 3.) Plaintiff further alleges that "Plaintiff received a response that the request would be passed along to Captain James Bailey, so that he would be aware of the issue." (*Id.*) And so, drawing all reasonable inferences in favor of Plaintiff at this stage, he has plausibly claimed that Captain Bailey had notice of a problem with Plaintiff's release date, given the person responding to the grievance stated they would pass the request along to Captain Bailey.[11]

> ### 2.    Failure to Act

The next question for the Court is whether Plaintiff sufficiently alleged that Captain Bailey "failed to act or took only ineffectual action under the circumstances." *Jones II*, 85 F.4th 805 at 811. Like the knowledge question, the Court finds that this issue is a close call.

In deciding the failure to act prong in a case such as this one, the defendant's rank and position in the correctional facility is key. For example, in *Jones II* the Sixth Circuit held that a warden, who took only minimal action after receiving notice of a potential problem with an inmate's sentence, was not deliberately indifferent because "the sentencing calculations were performed by the 'offender records' [d]epartment" and the warden "had no role in—or duty to

---

[10] Plaintiff attached the grievance form and the response to his complaint. (ECF No. 1-3.) But the claims in the grievance form confuse the Court. (*Id.*) One reading of the form is that he complained that the computer system stopped counting his days, not that his time served was missing. In any event, as explained in Footnote 11, the grievance form's lack of clarity does not affect this Court's analysis.

[11] In full, the response to the grievance stated: "while your booking in date was January 19th 2020 your sentence start date wasn't until August 7th, 2020. All time is put in by Lt. White who puts it in the computer based on paperwork she is giving by the Court. I will pass this request along to Captain Bailey so he is aware of your request." (ECF No. 1-3 (errors in original).)

insert himself into—that process." 85 F.4th at 819. Likewise, in *Rhoades*, the Sixth Circuit held that Secretary Tilley, the Secretary for the Cabinet over the Department of Corrections, was not deliberately indifferent to an inmate's risk of over detention because "the person or people responsible for [the inmate's] over detention had a duty to act, but the record does not show that Tilley was the official with that responsibility." 2022 WL 684576, at *5.

Plaintiff alleges that, at all relevant times to this lawsuit, Captain Bailey "was a Captain and correctional officer at Fayette County Jail." (ECF No. 1 at PageID 2.) But beyond this statement, Plaintiff makes no allegation about Captain Bailey's position or duties at the Jail. (*See id.*) For example, Plaintiff does not allege that Captain Bailey's duties included any role in sentencing calculations. (*See id.*) That said, as Plaintiff explains in the Complaint, when Plaintiff lodged a grievance complaining about his release date, the response he received from the prison stated that "the request would be passed along to Captain James Bailey, so that he would be aware of the issue." (*Id.* at PageID 3.) And so, drawing all reasonable inferences in favor of Plaintiff, the Court finds it plausible that Captain Bailey played at least some relevant role in sentencing calculations or release date inquiries. (*Id.*) But given the scant allegations about his role, what Captain Bailey was supposed to do about Plaintiff's complaint is far from clear.

In any event, Plaintiff alleges that Captain Bailey took no action to investigate Plaintiff's release date. (*Id.* at PageID 4.) In short, Plaintiff claims that his counsel submitted a public records request to Fayette County seeking any records relating to Plaintiff and "[n]owhere in the 113 pages of public record from Fayette County is there any evidence that Captain James Bailey took any action to investigate Plaintiff's claim that he should be released on April 10, 2022." (*Id.*) And with these allegations, the Court finds that it is plausible Captain Bailey failed to act.

With so little in the Complaint about Captain Bailey's role or responsibilities, Plaintiff's claim here stands on shaky ground.

In the end, the Court finds that Plaintiff plausibly alleged that Captain Bailey knew about a potential problem with Plaintiff's release date and that Captain Bailey failed to act on that knowledge. But for the reasons explained below, Captain Bailey is still entitled to qualified immunity because Plaintiff's claim fails on the causation prong.

### 3.    Causation

To assess whether a defendant was deliberately indifferent, courts look to whether there is a causal connection between the defendant's conduct and the plaintiff's allegedly unwarranted punishment. *See Jones II,* 85 F.4th at 811. And so, at this motion to dismiss stage, the Court examines whether Plaintiff sufficiently pleaded causation. As to causation, Plaintiff broadly asserts that "had Captain Bailey taken any action to investigate Plaintiff's claims, such as speaking to Plaintiff and viewing the court transcript for himself, Plaintiff would have been released on April 10, 2022, instead of spending 68 days unlawfully incarcerated in violation of his constitutional rights." (*See* ECF No. 1 at PageID 4.) The Court finds that this conclusory allegation is insufficient. For that reason, and for the reasons below, Plaintiff has failed to plead a causal link here.

### i.    *Jones v. Bottom*

As mentioned above, the Sixth Circuit recently faced a case like Plaintiff's. *See Jones II*, 85 F.4th at 811. In *Jones II*, the Commonwealth of Kentucky indicted Mr. Jones after he committed a series of bank robberies. *Id.* at 809. Normally under Kentucky law, time-served credits start accruing when Kentucky law enforcement brings the defendant into custody. *Id.* But Mr. Jones entered a plea deal. *Id.* And under that plea deal, Mr. Jones and the prosecutor agreed to an earlier start date for Mr. Jones' time-served credits. *Id.* Indeed, they agreed to

17

January 28, 2008, the date a Kentucky circuit court judge issued a bench warrant for his arrest. *Id.* at 820 (Griffin, J. dissenting). As the *Jones II* court explained, "[t]he plea agreement, in other words, reflected a negotiated deviation from otherwise-applicable provisions of Kentucky law, one that benefited Jones by affording him an earlier release date." *Id.* at 809.

At the sentencing hearing, the judge said he would sentence Mr. Jones consistent with the plea deal, and he told Mr. Jones that his time-served credits would start January 28, 2008. *Id.* at 820–821 (Griffin, J. dissenting).[12] But, for unknown reasons, the judgment did not mention the plea agreement or specify the "the fixed date for accruing time-served credit reflected in that agreement." *Id.* at 813. This means "the judgment of conviction did not modify Kentucky's standard formula for calculating a defendant's time served." *Id.*

And so, when Mr. Jones reported to serve his sentence, the Probation and Parole Division of the Kentucky Department of Corrections "calculated that Jones was entitled to 1,670 days of time-served credit, dating back to August 14, 2009," rather than January 28, 2008. *Id.* Mr. Jones agreed that this would be the proper calculation under Kentucky law's standard formula. *Id.* But he but "believed his sentence should reflect the terms of the agreement he reached with the prosecutor." *Id.* Unfortunately for Mr. Jones, under Kentucky law, the calculation "must track the inmate's judgment of conviction, not a plea agreement." *Id.* at 812. (citing *Machniak v. Commonwealth*, 351 S.W.3d 648, 652 (Ky. 2011)).

---

[12] Under Kentucky law, a trial court does not have to accept the plea agreement. *Id.* at 811 (citing *Prater v. Commonwealth*, 421 S.W.3d 380, 386 (Ky. 2014)). And if the trial court gives a sentence exceeding the plea agreement, then the trial court "'is deemed to have rejected the plea agreement.'" *Id.* (citing *Prater*, 421 S.W.3d at 386). But if the trial court rejects the plea agreement, it must notify the parties on the record and allow the defendant to withdraw his plea. *Id.* (citing Ky. R. Crim. P. 8.10; *Prater*, 421 S.W.3d at 386).

Under Kentucky law, challenges to sentencing calculations are directed to Offender Information Services ("OIS"). *Id.* at 813. And Mr. Jones made an administrative challenge to the sentencing calculation. *Id.* at 814. In the challenge, he explained that under his plea agreement, he should have received credit for time served dating back to January 28, 2008. *Id.* But, because the plea agreement was not in the judgment, Mr. Robert Belen, the OIS administrator who reviewed the plaintiff's challenge, did not consider the agreement. *Id.* And so Mr. Belen affirmed the initial sentencing calculations. *Id.* Mr. Jones disagreed with Mr. Belen, and then a second OIS administrator, Ms. Andrea Bentley, told Mr. Jones that he "had exhausted his administrative remedies and was entitled to return to the sentencing court to contest the Probation and Parole Division's calculation of Jones's sentencing credits." *Id.* In his Section 1983 action, Mr. Jones sued both OIS administrators, Mr. Belen and Ms. Bentley. *Id.*

Mr. Jones then filed a motion in the sentencing court, asking the court to use January 28, 2008, as the relevant date to calculate his time served. *Id.* In response, the court simply instructed the Division of Probation and Parole to recalculate the sentence, without mentioning the plea agreement. *Id.* An employee of the Division of Probation and Parole responded to the sentencing court, explaining that "she believed her initial calculation to be accurate." *Id.* But she also added that if the court had "information which may 'refute [her] findings,' she would 'reexamine' her calculation in light of that information." *Id.* In response, the court returned the employee's initial calculation with the judge's initials added to the document. *Id.* Ms. Bentley, one of the OIS administrators, took this to mean that the court "'was satisfied that the [sentencing] calculation had been done correctly.'" *Id.*

The Sixth Circuit found no deliberate indifference on the part of the OIS administrators, Mr. Belen and Ms. Bentley. *Id.* Indeed, the Sixth Circuit stated "[b]y any measure, defendants'

honoring of the sentencing court's judgment of conviction is not tantamount to deliberate

indifference." *Id.*  In the end, Mr. Jones' claim against the OIS administrators failed because

"there was no failure to act on [the administrators'] part" and there was no "injury to Jones

caused by that failure." *Id.*

In reaching these conclusions in *Jones II*, the Sixth Circuit discussed how the OIS

administrators took actions, such as engaging with Mr. Jones and reviewing his credits.[13]  *Id.*  at

816.  But the Sixth Circuit also reasoned that the administrators did not have the ability or

authority to intervene, and they could not have changed the sentencing court's judgment.  *Id.* at

816–17.  As the Sixth Circuit points out,

> And what 'ability and authority to intervene' did [the administrators] enjoy?  The
> two were presented with Jones's unilateral assertion that his criminal judgment was
> incorrect.  That conclusion, however, was anything but obvious, especially when
> the trial court disagreed with Jones's initial request for a sentencing recalculation.
> If the dissenting opinion means to say defendants should have amended or added
> to the court's judgment, what legal authority allowed them to do so?

*Id*.  As explained next, Captain Bailey is similar to the administrators in *Jones II*.

---

[13] In *Jones II*, the Sixth Circuit was clear that a deliberate indifference claim needs both failure to
act *and* causation.  85 F.4th at 814 ("A deliberate indifference claim in this context requires
knowledge, failure to act, and causation.").  And Mr. Jones' claim failed on both the failure to act
and causation prongs.  *Id.* at 815.  But, in its analysis of Mr. Jones' claim, the Sixth Circuit did
not delineate when it was discussing the failure to act prong and when it was discussing the
causation prong.  *Id.* at 815–18.  As part of its reasoning, the *Jones II* court explained that the
defendants investigated Mr. Jones' sentence, performed recalculations, and engaged with the
sentencing court.  *Id.*  Notably, these facts are missing in the current case; indeed, as alleged,
Captain Bailey took no action in response to Plaintiff's grievance.  But, although the *Jones II*'s
opinion is unclear on this point, this Court views the facts about the administrators' actions in
*Jones II* as contributing to the Sixth Circuit's holding that the administrators did not fail to act.
In the current case, given Captain Bailey allegedly took no action in response to Plaintiff's
grievance, Plaintiff's deliberate indifference claim fails only on the causation prong, rather than
failing on both the failure to act and causation prongs as was the case with Mr. Jones' claim in
*Jones II*.

#### ii.    Lack of Causal Connection Here

Plaintiff has not shown that Captain Bailey could have changed Plaintiff's release date or intervened in a meaningful manner. And this is because (1) it was unclear the Circuit Court's written order was incorrect, given the Circuit Court failed to fix its own mistake, and (2) Captain Bailey was unable to alter the Circuit Court's written order or to ignore that order.

To start, like the defendants in *Jones II*, Captain Bailey faced Plaintiff's unilateral assertion that his release date in the prison computer system was wrong.[14] Indeed, even the Circuit Court initially disagreed with Plaintiff. Plaintiff moved for a reduction four times before the Circuit Court corrected the sentence. In fact, the Circuit Court failed to rule on Plaintiff's first two motions, and it denied his third one. (ECF No. 15-3 at PageID 153, 196–99.) And while the Circuit Court's delays and mistakes were unfortunate and consequential, these wrongs are not attributable to Captain Bailey. And so, this Court cannot expect Captain Bailey to have found the Circuit Court's error while the Circuit Court itself failed to realize its order was flawed. *See Jones II*, 85 F.4th at 815 (noting that it was not obvious that the judgment was

---

[14] Plaintiff's grievance form confuses the Court. He wrote, "im writing concerning my time in yall computer it has been saying that I have been here 768 days for about 2 months i have been incarcerated here since january 19,2020 and today 4-1-2022 would be 803 days of being incarcerated here." (ECF No. 1-3.) In this grievance, it seems that Plaintiff's claim is that the jail computer system's day counting mechanism was stuck for two months. (*See id.*) In other words, the grievance does not allege that the computer system failed to incorporate his time served. (*See id.*) At best, Plaintiff's mention of January 19, 220, shows that Plaintiff thought he should receive time served credit. (Plaintiff was brought into custody January 19, 2020, but he was not sentenced until August 7, 2020.) But even so, it is unclear how Captain Bailey could have uncovered that time served credits were at issue. Indeed, seemingly Plaintiff alleged that the day counter was off by 35 days (768 subtracted from 803 is 35), not 202 days (the number of days for which Plaintiff should have received time served credit). But because neither party has argued that the grievance form did not relate to Plaintiff's time served credits, the Court does not consider that issue here. Perhaps the parties are aware of an explanation for the grievance form's lack of clarity that the Court is not.

incorrect, in part because the "trial court disagreed with [the] initial request for a sentencing recalculation.").

And even though Plaintiff mentioned in his grievance that he had "paperwork" to prove his release date, this does not change the Court's finding that the error in his sentencing order was not an obvious one. (ECF No. 1-3.) Simply put, Plaintiff did not claim in his grievance, or in the Complaint in this lawsuit, that the "paperwork" he had in his possession included his sentencing transcript. (ECF No. 1-3.) And he did not explain in the grievance that the sentencing transcript and court order did not match. (ECF No. 1-3.) Likewise, in *Jones II*, Mr. Jones in his sentencing challenge informed the administrators that, under his plea agreement, he should have received time served credit. 85 F.4th at 814. For all that, the Sixth Circuit did not fault the administrators for failing to consider the plea agreement, because the plea agreement was not mentioned in the written judgment. *See id.* Likewise here, the Circuit Court's written order did not mention the sentencing transcript. (ECF No. 1-2.)

Next, even if Captain Bailey had realized the Circuit Court's written order was incorrect, he was unable to change the Circuit Court's order or to ignore it. *See Jones II*, 85 F.4th 805 at 818 ("Having prison officials pick and choose the orders they will honor renders judicial rulings little more than suggestions, a predicament the courts have fought to avoid since the founding."). Indeed, in Tennessee, "[i]t is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts." *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015); *see also Smith v. Benihana Nat'l Corp.*, 592 S.W.3d 864, 875 (Tenn. Ct. App. 2019).[15]

---

[15] These quotes are from civil cases, rather than criminal cases. But the Court sees no reason why this principle would apply differently in the criminal law context. What is more, Defendant

Still, in response to Captain Bailey's Motion to Dismiss, Plaintiff argues that Captain Bailey "likely only needed to review Plaintiff's transcript and provide his assessment to the Fayette County Sheriff, Chief Jailer, or a State Attorney General." (ECF No. 21 at PageID 237.) But Plaintiff does not explain how any of these people could have lawfully released Plaintiff, given the Circuit Court's written order. To the contrary, sheriffs must enforce orders of the court. Tenn. Code Ann. § 8-8-201(a)(1). Likewise, Plaintiff has pointed to no policy, procedure, or rule about sentencing corrections or calculations that Captain Bailey failed to follow. *See Jones II*, 85 F.4th 805 at 816 (finding no deliberate indifference in part because the plaintiff pointed to no rule or policy that the defendants failed to follow). In sum, Captain Bailey did not cause Plaintiff's detention beyond the correct length. *Id.* ("And even if [the plaintiff] had cited an exceptional (and lawful) avenue [the administrators] theoretically could have pursued to take account of Jones's unadopted plea agreement, it surely does not reflect deliberate indifference for failing to do so.").

To be sure, Tennessee law provides a way to correct illegal sentences. And this method involves the inmate filing a motion in the sentencing court, not to jail officials. *See* Tenn. R. Crim. Pro. 36.1 ("Either the defendant or the state may seek to correct an illegal sentence by filing a motion to correct an illegal sentence in the trial court in which the judgment of conviction was entered."). Indeed, the Jail was attuned to the Circuit Court's orders and sentencing corrections;[16] once the Circuit Court finally issued an order correcting Plaintiff's

---

relied on this principle in his motion to dismiss, and, in his response, Plaintiff made no argument the principle does not apply in the criminal law context.

[16] And for the reasons explained in Footnote 2, any argument that Captain Bailey was not following or otherwise acting pursuant to the Circuit Court's written orders does not persuade the Court.

23

sentence (ECF No. 15-2 at PageID 217), the Jail released him immediately.  (*See* ECF No. 1 at PageID 4.)

In the end, although Plaintiff broadly alleges that he would have been released had Captain Bailey taken any action (like speaking with Plaintiff or reviewing the court transcript), this allegation does not meet the pleading standard and is not enough to survive the Motion to Dismiss.  Indeed, the Complaint contains no detail on how these actions would have led to Plaintiff's release.  (*See id.*)  Likewise, Plaintiff fails to point to any legal authority showing how Captain Bailey could have overridden or changed the Circuit Court's written order.  Accordingly, the Court finds that Plaintiff's deliberate indifference claim fails on the causation prong.

Given the Court finds that Captain Bailey was not deliberately indifferent and there is no clearly established right at issue, Captain Bailey is entitled to qualified immunity here.  And because Captain Bailey is entitled to qualified immunity, the Court need not address whether he is also entitled to quasi-judicial immunity.

## **CONCLUSION**

For the reasons above, the Court **GRANTS** the Motion to Dismiss.

**SO ORDERED**, this 27th day of March, 2025.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE